**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| vs. | ) | Criminal. No.:  9:18-0685-RMG |
| | ) | |
| George Hall, | ) | **Order** |
| | ) | |
| | ) | |

Before the Court is Defendant George Hall's motion to for a new trial. (Dkt. No. 228.) The Government responded. (Dkt. No. 232.) For the reasons set forth below, the motion is denied.

**I.   Background**

On November 9, 2021, a jury found George Hall guilty of one count of assault of another inmate with a dangerous weapon and with intent to do bodily harm, and one count of assault of another inmate with such assault resulting in serious bodily injury. (Dkt. No. 223.)  These convictions arose from a February 6, 2018 incident at Estill Federal Correctional Institution during which Hall beat a fellow inmate, Jose Vasquez-Carrion, with a handmade weapon of a lock in a sock tied to a belt, causing severe head injury to the victim.  The victim had no prior contact with Hall.  (Dkt. Nos. 1, 40 at 11, 72 at 10, 86-7 at 1-2, 87-6 at 2-3, 87-7, 87-9 at 3.)  At trial, the Government presented evidence including the testimony of Bureau of Prisons (BOP) Nurse Alexis Chambers.  Hall now moves for a new trial on the basis of Nurse Chambers's testimony.

**II.   Legal Standard**

Rule 33 of the Federal Rules of Criminal Procedure permits the district court, upon motion from the defendant, to vacate any judgment and grant a new trial "if the interest of justice so requires."  The defendant must so move within fourteen days of the verdict if the grounds for his motion are any reason other than newly discovered evidence. Fed. R. Crim. P. 13(a), (b)(2).  "A

new trial is a drastic remedy intended for the rare case." *United States v. Chin*, 1999 WL 333137, at *1 (4th Cir. 1999) (unpublished table opinion). The "district court should exercise its discretion to grant a new trial sparingly and [ ] the district court should grant a new trial based on the weight of the evidence only when the evidence weighs heavily against the verdict." *United States v. Wilson*, 118 F.3d 228, 237 (4th Cir. 1997) (internal quotation marks omitted). "The district court should examine all the evidence introduced at trial and—unlike when ruling on a motion for acquittal—the court may evaluate for itself the credibility of witnesses." *Chin*, 1999 WL 333137, at *1. Where the evidence in the record is sufficient to support the jury's verdict, a Rule 33 motion must be denied. *See United States v. Singh*, 518 F.3d 236, 250 (4th Cir. 2008).

### III.  Discussion

Hall argues that the interest of justice requires a new trial because:

> Nurse Chambers testified and contradicted the Government's claim that she was a mere nurse asking medical questions. Under direct examination by the government, Ms. Chambers described how she responded to the body alarm the night of the incident involving Hall. While describing her responsibility to respond to an alarm, she informed the jury that she is also trained as a correctional officer. She stated something to the effect of, "We are all C[orrectional] O[fficers] *first*." She suggested that her primary role was as a correctional officer, not a nurse. This admission reinforces Defendant's claim in his previous motion [to suppress statements] that not only was he 'in custody' for the purposes of *Miranda*, but also that he was *interrogated* by Chambers.

(Dkt. No. 228 at 1-2) (emphasis in original). Addressing this argument requires the Court to clarify both its prior ruling on the motion to suppress and Nurse Chambers's trial testimony.

### A.  The Court's Prior Ruling on Hall's Motion to Suppress

Prior to trial, Hall moved to suppress statements he made to Nurse Chambers shortly after the assault on February 6, 2018. According to Hall's motion to suppress, after being interviewed by Lieutenant Talley, he remained handcuffed and was escorted to the SHU by two officers. In the SHU, Hall was placed in a barred holding cell where he was photographed while handcuffed.

- 2 -

(Dkt. Nos. 153-4, 153-5.) Nurse Chambers entered the cell, with four officers present nearby (Hall did not specify if they were inside or outside the holding cell). According to Nurse Chambers's Clinical Encounter, the categories of information sought and Hall's responses were:

> "Where Did Injury Happen (Be Specific as to location)."
> "DA unit near the police station"
>
> "Cause of Injury (Inmate's Statement of how injury occurred).
> "I'm not hurt. I hit the other guy with a belt and lock."
>
> "Symptoms (as reported by inmate)."
> "I'm good. I didn't get hurt."

(Dkt. No. 153-2 at 1.)

Hall argued that he was in custody and these questions constitute interrogation because they were irrelevant to Nurse Chambers's job of assessing Hall's medical needs. The Government countered that Hall was not in custody for purposes of *Miranda* because he was waiting for medical treatment, under *United States v. Conley*, 779 F.2d 970, 972-74 (4th Cir. 1985). The Court noted that the *Conley* analysis is more nuanced than simply identifying that an inmate defendant was interviewed in a room he was put it primarily to get medical treatment. *See* Conley, 779 F.2d at 973-74 (court considering: type of room defendant inmate was in, whether interview was interrupted for medical treatment, whether he was in handcuffs, standard prison procedure when transferring inmates within maximum security facility, how inmate was addressed by officers, inmate's "friendly" prior relationship with officers, and that inmate concedes his statement was voluntarily made); *see also Jamison*, 509 F.3d at 632 (defendant not in custody when, among other relevant circumstances, he was questioned inside hospital emergency room he transported himself to for medical attention and himself solicited the officer's assistance).

The Court found Hall was not subject to custodial interrogation. Because whether or not Hall was in custody for purposes of *Miranda* when handcuffed inside the holding cell, the Court

found that he was not interrogated by Nurse Chambers. Interrogation for *Miranda* purposes is "either express questioning or its functional equivalent." *Rhode Island v. Innis*, 46 U.S. 291, 301 (1980). This includes words or actions that the questioner "should know are reasonably likely to elicit an incriminating response from the suspect." *Id*. This definition "focuses primarily upon the perception of the suspect, rather than the intent of the" questioner. *Id*. By contrast, the record reflected that Nurse Chambers was simply filling-in Hall's response to a standard form questionnaire—consisting of three items, each ending in a period and a not question mark—regarding possible injuries. The Court found that these form items were not express questioning or its functional equivalent that Nurse Chambers should have known were reasonably likely to elicit any incriminating response from Hall, nor were they specifically designed to continue the interrogation that had occurred prior in Lieutenant Talley's office, which the Court suppressed. On the basis that Hall was not interrogated, and therefore could not have been subject to custodial interrogation, the Court denied Hall's motion to suppress his statements to Nurse Chambers. (Dkt. No. 158.)

**B.     Nurse Chambers's Trial Testimony**

At trial, Nurse Chambers testified, in relevant part, that she has a bachelor's degree in nursing, has performed and even "taught how to perform assessments on patients" to determine the severity of the patients' injuries, and that the Estill clinic is "basically an ambulatory care clinic, basically like a rural primary care setting" where, as the only nurse on duty on February 6, 2018, Nurse Chambers's responsibility was to do a "quick assessment to see the level of care that a person may need." Regarding the night of February 6, 2018, Nurse Chambers testified to how she learned of the assault and responded to the victim:

> We all have portable radios. And so over the radios they stated that there was a fight of some sort in the housing unit. I responded. We all are trained to be correctional

workers first. So I ran to the unit. When I got to the unit, there was nothing going on at the time. I noticed pretty much everybody had dispersed. But I followed the other staff upstairs where I saw blood throughout the steps along the walkway and where I met inmate Carrion.

(Dkt. No. 231.)

### C.     Hall's Motion for a New Trial is Denied.

Nurse Chambers provided Hall with three form categories of information to assess his injuries. Assessing injuries was one of her primary duties as a nurse. And the categories of information she presented were indeed tools to assess injuries regardless of where or how the injury arose. That is why the Court found they did not constitute interrogation for purposes of *Miranda*. In so ruling, the Court specifically held that the *Conley* analysis was far more nuanced than simply identifying Nurse Chambers as a nurse. Instead, the Court carefully considered the substance and context of the three form categories of information that she presented to Hall and determined that they did not amount to interrogation. As a nurse employed by the BOP, whether Nurse Chambers considers herself primarily a nurse or a correctional officer was inapposite to the analysis resulting in no suppression. And even if it were relevant, which it is not, Nurse Chambers's subsequent trial testimony—that she responded to a radio call of a fight in the housing unit because "[w]e are all trained to be correctional workers first"—simply goes to the fact that, as a BOP employee on duty at the time, she apparently believed from her training that she was expected to physically go to the scene of a fight called out over the radio to all employees rather than remain in the medical clinic, for instance. This testimony does not, in the interest of justice, require a new trial.

### IV.     Conclusion

For the foregoing reasons, Hall's motion for a new trial (Dkt. No. 228) is **DENIED**.

**AND IT IS SO ORDERED.**

                                  s/ Richard Mark Gergel
                                  Richard Mark Gergel
                                  United States District Judge

December 9, 2021
Charleston, South Carolina